THE FERRIES COMPANY *v.* UNITED STATES.

APPEAL FROM THE COURT OF CLAIMS.

No. 46.   Argued October 8, 1924.—Decided November 17, 1924.

A ten year lease of ferry property provided that, at its termination, the property leased, including any additions and betterments that might be made by the lessee, should be valued by appraisers, and that if such valuation were less than the value of the property as similarly appraised when the lease was made, the lessee should pay the difference, but, if more, the lessors should pay it. During

the war, when the term had nearly run, the United States, by agreement with the parties, took over the operation of the ferries, under stipulations that the lease should then terminate, that appraisal should be made as of that time, as if the lease had then regularly terminated, and that any money thus found due the lessee or lessors, as the case might be, should be paid to the one so entitled, and charged against the other, by the United States. *Held,* that an award for the lessee, based largely on conditions and values existing before the advent of war prices, correctly interpreted the lease and agreement, and that the lessee was not entitled to set the award aside, or to any relief in a court of equity. P. 263.

57 Ct. Clms. 616, affirmed.

APPEAL from a judgment of the Court of Claims dismissing the petition.

*Mr. W. R. L. Taylor,* with whom *Mr. Hugh C. Davis* and *Mr. Hugh W. Davis* were on the briefs, for appellant.

*Mr. Alfred A. Wheat,* Special Assistant to the Attorney General, with whom *Mr. Solicitor General Beck* and *Mr. George Ross Hull,* Special Assistant to the Attorney General, were on the brief, for the United States.

MR. JUSTICE BUTLER delivered the opinion of the Court.

The city of Portsmouth and the county of Norfolk, Virginia, made a lease of the Norfolk Ferries operating between Portsmouth, Norfolk and Berkeley for a term of ten years, beginning April 1, 1909, to plaintiff's assignor. The properties consisted of boats, their equipment, wharves and other property used for the operation of the ferries. All the property turned over to the lessee, except land, was taken by the lessee upon the inventory and valuation thereof made by a board of appraisers selected under a prior lease then about to expire. It was agreed that at the termination of the lease the property so accepted, including any boats which might be purchased or built by the lessee for the operation of the ferries, and

any improvements made by the lessee should be inventoried and valued by a board of five disinterested persons. And it was provided that if such valuation should be less than the value of the property turned over to the lessee by the lessors, the lessee should pay the difference, but if more, the lessors should pay the difference.

Under date of October 8, 1918, the lessors, the plaintiff and the United States (acting by the Bureau of Industrial Housing and Transportation of the Department of Labor) made an agreement, by which the United States took over the operation of the ferries. It was provided that the lease should terminate at the time of the turning over of the properties to the Bureau and that " the appraisal . . . provided for in said lease shall take place as of the time that the ferries shall be taken over by the Bureau instead of at the regular termination of the said lease, as therein provided, and said appraisal shall be made in the same manner as if the said lease had regularly terminated at the date that the said ferries are taken over by the Bureau . . ." It was agreed that if, as a result of the appraisal, plaintiff was found to be entitled to any money from the lessors, it should be paid by the Bureau and charged to lessors, and that if the lessors were found to be entitled to any money from the plaintiff it should be paid to the Bureau and credited to lessors. The ferries were taken over and their operation was commenced by the Bureau, November 1, 1918.

The appraised value of the properties as of March 31, 1909, was $152,274.40. The appraised value as of October 31, 1918, determined under the agreement, was $164,-928.68. This valuation, except as to certain items amounting to $33,688.65, was based on prewar conditions and values. The Court of Claims found that the value of the properties as of the last mentioned date, based on war prices and values then prevailing, was $289,575.80.

It is clear that, under the agreement of October 8, 1918, the United States was bound,—and it was stated by its counsel that it has been willing,—to pay plaintiff the difference between the appraised value of the properties turned over to lessee, March 31, 1909, and the appraised value of those turned over by plaintiff, October 31, 1918. But, by its petition in this action, plaintiff asserted that it was entitled to have that value determined on the basis of prices prevailing October 31, 1918, alleged that this was $343,702.16, and prayed that the appraisers' valuation be set aside, and that the court determine the value and give plaintiff judgment against the United States for the amount thereof.

The Court of Claims found the facts as indicated above. As a conclusion of law, it decided that the petition should be dismissed for want of jurisdiction. It entered judgment that the plaintiff was not entitled to recover, and that the petition be dismissed.

Plaintiff was not entitled to recover the value of the properties it turned over to the United States. There was no expropriation. The transfer was made under the agreement.

The valuation under the agreement was not required to be made on the basis of war conditions and prices then prevailing. The appraisal was to take place as of the time, and it was to be made as if, the lease had terminated. The purpose of the two appraisals provided for in the lease,—one at the beginning and the other at the end of the term—was to find the changes which had occurred in the value of the properties due to changes in condition of the things received by the lessee at the beginning and returned to lessors at the end of the term, and also the changes due to retirements, additions and betterments during the term. It is apparent from the provisions of the lease,—and in his argument before the court plaintiff's

counsel conceded,—that it was not intended that any gain or loss to lessors or lessee should result from differences between unit prices existing at the beginning of the term and those prevailing at its expiration. Plainly, it was not the intention of the agreement to give plaintiff the benefit of high prices then prevailing. It was not the owner, and its lease was about to expire. On the basis of the appraisals provided for in the lease, it would have been entitled to receive no more than $12,654.28. The parties knew that prices in October, 1918, were much higher than those on which the appraisal of March 31, 1909, was made, and that, if they were to be taken as the basis of appraisal under the agreement, plaintiff, by mere rise of prices applicable to property it did not own, would profit enormously. It was not in position to exact any such amount. The provisions of the agreement show that the parties intended to make no change in the basis of valuation. The appraisal was to be made as if the lease had terminated and on the same basis of prices and conditions. This so plainly appears from the language of the agreement that elucidation is not necessary.

Plaintiff did not seek to recover on the basis of the appraisal made under the agreement with the United States, but on the contrary, it assailed that valuation as null and void. The only ground of attack relied on in this Court was that the appraisers misconstrued and misapplied the agreement. But, as above indicated, we hold there was no misinterpretation. The facts found are not sufficient to entitle the plaintiff to have the award set aside, or to any relief in a court of equity. Therefore, the jurisdiction of the Court of Claims to grant equitable relief need not be considered.

*Judgment affirmed.*